UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARY BARNES,

        Plaintiff,

v.

PETER HEGSETH,
Secretary of Defense.[1]

        Defendant.

Civil Action No. 23-cv-932

**MEMORANDUM OPINION**

Plaintiff Mary Barnes sued the Department of Defense ("DOD"), claiming that it misclassified her on the federal government pay scale. Her Complaint brings five counts under Title VII, the Age Discrimination in Employment Act, and the Equal Pay Act. Defendant moved to dismiss each count. Def.'s Mot. to Dismiss at 1–23, ECF No. 16-1 ("Def.'s Mot."). For the reasons stated below, the court will GRANT Defendant's Motion.

I.     BACKGROUND

Plaintiff is a Black woman, born in 1959. Compl. ¶ 8, ECF No. 1 ("Compl."). For thirty-eight years, between November 1996 and August 2021, she worked for DOD. *Id.* ¶ 10. She retired as the Chief of Accounts Payable in the Financial Management Division of the Chief Financial Officer. *See id.* ¶¶ 9–10. Her duties included managing civilian pay and vendors' daily functions and supervising two sections within the division. *Id.* ¶ 11. Plaintiff alleges that she "consistently" received outstanding performance reviews and never received a written complaint or a

---

[1] The court updated the caption in this Opinion to reflect the current Secretary of Defense. Fed. R. Civ. Pro. 25(d).

performance improvement plan. *Id.* ¶ 12. As measured by the General Services ("GS") pay scale, which is used to determine most civilian government salaries, Defendant classified Plaintiff and six other minority supervisors within her division as GS13. *Id.* ¶ 15. But Defendant classified "hundreds of other" financial supervisors as GS14s. *Id.* ¶ 16.

For five years, between 2015 and 2020, Plaintiff inquired about the fact that she had not been classified as a GS14. *Id.* ¶¶ 18–31. In 2015, she asked the then Chief Financial Officer why she and other similar supervisors were not classified as GS14s and was told that it was because "they did not work within the beltway." *Id.* ¶ 18. In 2019, she emailed supervisors asking a similar question but received no satisfactory answer. *Id.* ¶ 19. In 2020, she received conflicting information regarding whether she should be correctly classified as GS14. *See id.* ¶¶ 20–24.

On March 11, 2021, "Defendant refused to upgrade Plaintiff's position from GS13 to GS14, and refused to increase Plaintiff's pay accordingly after Plaintiff's position was classified as equivalent to a GS14 level, Supervisory Financial Specialist." *Id.* ¶ 26. In addition, "Defendant failed to give Plaintiff a bonus in the amount of $10,000 for working at the GS14 level." *Id.* ¶ 27. "[F]rom March 24, 2021, through May 13, 2021," Defendant continued to refuse to promote Plaintiff. *Id.* ¶ 28. On May 13, 2021, Plaintiff met with the new Director and division supervisor, and the new Director told Plaintiff that "he would love to see" her promoted but that he would not change the promotion criteria. *See id.* ¶ 29.

Plaintiff made a formal complaint to the Equal Employment Opportunity ("EEO") Counselor on June 24, 2021. *Id.* ¶ 30. She then contacted the Office of the Inspector General to discuss that complaint; the Office confirmed, but never conducted, a meeting. *Id.* ¶ 31.

Plaintiff brings the following causes of action: (I) race discrimination under Title VII; (II) sex discrimination under Title VII; (III) age discrimination under the Age Discrimination in

Employment Act ("ADEA"); (IV) violation of the Equal Pay Act based on sex under 29 U.S.C. § 201 *et seq.*; and (V) retaliation under Title VII. *Id.* ¶¶ 32–75. She seeks $300,000 in compensatory damages, emotional distress, prejudgment and post judgment interest, removal of adverse actions from her personnel file, attorneys' fees and costs, and past and future non-economic damages. *Id.* at 14. Defendants moved to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6). ECF No. 16.

## II.    LEGAL STANDARD

A motion made under Rule 12(b)(6) tests whether a complaint "states a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While detailed factual allegations are not necessary to withstand a Rule 12(b)(6) challenge, a plaintiff must nonetheless provide "more than labels or conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible only when a plaintiff pleads factual content that enables the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## III.    ANALYSIS

### A.  Race, Age, and Sex Discrimination

Defendant argues that Plaintiff failed to exhaust her discrimination claims before May 10, 2021, because she did not contact her EO counselor until June 24, 2021. Def.'s Mot at 4–6. The court agrees.

"[A] court may not consider a discrimination claim that has not been exhausted[.]" *Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir. 2008). For Plaintiff to exhaust her discrimination claims, she must have initiated contact with an EEO counselor within 45 days of when she became aware

of the discriminatory act. 29 C.F.R. § 1614.105(a)(1). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

Plaintiff had "reason to believe" that she had been the victim of discrimination as early as 2015. *See Morris v. U.S. Dep't of Just.*, 298 F. Supp. 3d 187, 193 (D.D.C. 2018) (finding that a plaintiff failed to administratively exhaust her discrimination claim because she waited a year and a half before contacting her EEO counselor despite being aware of a discriminatory act); Compl. ¶ 16. That year she asked the Chief Financial Officer why she and other minority supervisors were not being promoted to GS14. *Id.* ¶ 18. She continued to ask other supervisors the "same question" in 2016 and 2017. *Id.* She kept inquiring "about the equality of Defendant's grading structure" in 2019 and 2020. *Id.* ¶¶ 19–20. She notes that all but "two GS13s within" Plaintiff's division received promotions by January 2021. *Id.* ¶ 25. And she alleges that from March 11, 2021, until May 13, 2021, Defendant "refused to upgrade" her position. *Id.* ¶¶ 27–28.

Yet Plaintiff concedes that she waited until June 24, 2021, to contact an EEO counselor about Defendant's actions. *Id.* ¶ 30. She contacted the EEO counselor again on October 8, 2021. *Id.* ¶ 5.[2] Plaintiff does not specify whether she complained of the race, age, and sex discrimination she now alleges in this action, and she does not attach any EEO documents. But assuming she did complain about all three types of discrimination, the only discriminatory acts properly exhausted within the 45-day time period are those occurring after May 10, 2021. Any alleged discrimination before May 10, 2021, cannot form the basis of Counts I–III. Compl. ¶¶ 8–31; *Peyus v. Lahood*,

---

[2] Plaintiff also alleges that she contacted "her supervisors and the Defendant's EO" in "2015, 2019, 2020, and 2021." Compl. ¶ 60. But she concedes in her opposition that her "first contact" with an EEO counselor was not until June 24, 2021. Pl.'s Opp'n at 3, ECF No. 18 (Pl.'s Opp'n).

919 F. Supp. 2d 93, 99 (D.D.C. 2013) (excluding unexhausted allegations from a discrimination claim); *Gordon v. Napolitano,* 786 F. Supp. 2d 82, 85 (D.D.C. 2011) (same).

Plaintiff's only response is that Defendant's actions before May 10, 2021, are "reasonably related" to her EEO complaint.  Pl.'s Opp'n at 6   Continuing violations, however, are "not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113.

Moreover, Plaintiff still fails to state a claim for Counts I through III even based on Defedant's conduct after May 10, 2021.  First, she alleges that Defendant refused to upgrade her to GS14, Compl. ¶ 28; on May 13, 2021, the new Director told her that "he would love to see" her promoted but that he would not change the promotion criteria; *see id.* ¶ 29; and sometime in July or August, the Office of the Inspector General scheduled, but never held, a meeting to discuss Plaintiff's complaints.  *Id.* ¶ 31.  But none of those allegations are sufficient to state a claim of discrimination under Title VII or the ADEA, because Plaintiff does not allege that Defendant's refusal to upgrade her position was based on her race, sex, or age.  42 U.S.C. § 2000e-16(a); 29 U.S.C. § 633.

To be sure, Plaintiff does tie her discrimination claims to comparators who were paid at the GS14 level.  For her racial discrimination claim, she alleges that her white, female, and younger supervisor was a GS14.  Compl. ¶ 39.  For her sex discrimination claim, Plaintiff alleges that her supervisor's white husband was hired into her same division and paid as a GS14, unlike her.  *Id.* ¶ 49.  And for her ADEA claim, Plaintiff describes two younger employees, both her supervisors at different times, who were also paid as GS14s.  *Id.* ¶ 57.  A plaintiff may plead a Title VII or ADEA discrimination claim by alleging "that (1) [s]he is a member of a protected class, (2) [s]he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference

of discrimination (that is, an inference that his employer took the action because of [her] membership in the protected class)." *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (citation and internal quotation marks omitted); *Barot v. Aldon Mgmt.*, No. 18-cv-140, 2023 WL 6199075, at *6 (D.D.C. Sept. 22, 2023) ("Courts apply Title VII's framework to ADEA claims, including the standards for evaluating comparator evidence."). And a "plaintiff can raise an inference of discrimination by showing that she was treated differently from similarly situated employees who are not part of the protected class." *Brown*, 774 F.3d at 1022 (internal quotation marks and citation omitted). But, again, Plaintiff fails to specify when she learned of the alleged comparators, whether before or after May 10, 2021, so the court cannot conclude that those allegations are exhausted. 29 C.F.R. § 1614.105(a)(1). Accordingly, Counts I through III must therefore be dismissed.

### B. Equal Pay Act

Although Defendant argues otherwise, this court lacks jurisdiction to consider Plaintiff's Equal Pay Act claim. Def.'s Mot. at 14–17. The D.C. Circuit has held that "the Court of Federal Claims has exclusive jurisdiction to adjudicate" an Equal Pay Act claim if the plaintiff failed to "clearly and adequately express" an intent to waive their claim over $10,000. *See Waters v. Rumsfeld*, 320 F.3d 265, 272 (D.C. Cir. 2003). Plaintiff has not done so. Compl. ¶¶ 60–66.

Defendant contends that *Waters* is "no longer good law" after the Supreme Court's decision in *United States v. Bormes*, 568 U.S 6, 15 (2012), which called into question whether a plaintiff needs to sue under the Tucker Act to establish district court jurisdiction over an Equal Pay Act claim. Def's. Mot. at 14. But courts in this Circuit have yet to oblige the government's request to distinguish binding Circuit precedent. *Johnson v. Lightfoot*, 273 F. Supp. 3d 278, 287–88 n.5 (D.D.C. 2017) (rejecting Government's view, concluding that court lacked jurisdiction); *Adair v. Bureau of Customs & Border Prot.*, 191 F. Supp. 3d 129, 133 (D.D.C. 2016) (same). This court

follows suit.  "[U]nless and until the D.C. Circuit announces that its decision in *Waters* . . . has been overruled by *Bormes*, it is still good law."  *Atta v. Consumer Fin. Prot. Bureau*, No. 18-cv-2033, 2019 WL 13292029, at *2 (D.D.C. Apr. 29, 2019).  Accordingly, Count IV must also be dismissed for lack of subject matter jurisdiction.

### C. Retaliation

Defendant argues that Plaintiff's retaliation claim should be dismissed because it fails to establish causation.  Def.'s Mot. at 9–12.  The court agrees.

To state a Title VII claim for retaliation, a plaintiff must allege "that (1) [she] engaged in protected activity; (2) [she] was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action."  *Baird v. Gotbaum*, 792 F.3d 166, 168 (D.C. Cir. 2015) (internal quotation marks and citation omitted).  The "employee's protected activity must be the impetus for the employer's adverse and allegedly retaliatory employment action, and the action cannot have already been contemplated by the employer before it learned of the protected activity."  *Salak v. Pruitt*, 277 F. Supp. 3d 11, 22 (D.D.C. 2017) (internal quotation marks and citation omitted).  "Consequently, while causation can sometimes be inferred from a close temporal relationship between the protected activity and the allegedly adverse action in retaliation cases, the sequence truly matters[.]"  *Id.* at 22.

Plaintiff did not complain to an EEO counselor until June 24, 2021, so any actions Defendant took before that time cannot have been in retaliation for her EEO complaint.  Compl. ¶ 5.  After all, "[t]he fact that the alleged retaliatory actions preceded the protected activity precludes a determination that the protected activity caused the defendant to retaliate against the plaintiff."  *Lewis v. Columbia*, 653 F. Supp. 2d 64, 79 (D.D.C. 2009).

Nor does Plaintiff allege that she complained before 2021 of any type of discrimination when she spoke to her supervisors regarding her GS classification and bonus pay.  The closest

Plaintiff comes to doing so was in 2015 when she met with the Chief Financial Officer and "questioned why" she and six other minorities were not GS14s. Compl. ¶ 18. And in 2019, Plaintiff emailed her supervisors about the "equality" of Defedant's GS scale assignments. *Id.* ¶ 19. But "[n]ot every complaint garners its author protection under Title VII." *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006). "While informal complaints to management may constitute protected activity, the plaintiffs must clearly complain about discriminatory treatment." *Peters v. D.C.*, 873 F. Supp. 2d 158, 202 (D.D.C. 2012). Merely inquiring about the lack of a promotion, while referencing other similarly situated supervisors, is not a specific complaint about unlawful discrimination. Thus, Count V also warrants dismissal.

The court nonetheless recognizes that informal complaints to supervisors can constitute protected activity when explicitly concerning discrimination. *See Dodson v. U.S. Capitol Police*, 633 F. Supp. 3d 235, 261 (D.D.C. 2022) (finding that informal complaints to supervisors when explicitly referencing racially disparate treatment can constitute protected activity). Therefore, because "justice so requires" the court will grant Plaintiff leave to amend her complaint by the date specified in the accompanying order. Fed. R. Civ. Pro. 15(a)(1), Pl.'s Opp'n at 13. Plaintiff may seek to "amplify or elaborate on [] previously alleged claim[s]." *Hisler v. Gallaudet Univ.*, 206 F.R.D. 11, 13 (D.D.C. 2002).

### IV.   CONCLUSION

For the foregoing reasons, the court will GRANT Defendant's Motion to Dismiss. A corresponding order will follow shortly.

Date: March 26, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge