UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARY BARNES,

       Plaintiff,

   v.

PETER HEGSETH,
Secretary of Defense,

      Defendant.

Civil Action No. 23-0932 (TSC)

**DEFENDANT'S MOTION TO DISMISS
AND MEMORANDUM IN SUPPORT THEREOF**

Pursuant to Federal Rules of Civil Procedure 12(b)(6), Defendant Peter Hegseth, in his official capacity as Defense Secretary (the "Secretary"), moves to dismiss Plaintiff Mary Barnes's amended complaint (ECF No. 24) for failure to state a claim upon which relief can be granted. Barnes's amended complaint raises claims of race and sex discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(c), and age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. The Court has previously dismissed Barnes's claims and permitted her to amend her complaint "to amplify or elaborate on [her] previously alleged claims." Mem. Op. (ECF No. 22) at 8 (cleaned up). Barnes's Amended Complaint fails to do so and, as a result, Barnes fails state a claim upon which relief can be grated. For these reasons, this Court should dismiss the Amended Complaint in its entirety.

**BACKGROUND**

For a detailed summary of the facts, the Secretary refers the Court to the Court's Memorandum Opinion (ECF No. 22) at 1-3. For purposes of this motion to dismiss, the Secretary

only summarizes the relevant factual assertions in Barnes's Amended Complaint, which at this stage are presumed to be true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).[1]

Barnes is an African American woman born in 1959.  Am. Compl. (ECF No. 24) ¶ 5.  She worked at the Department of Defense (the "Department") in various roles for thirty-eight years, from May 9, 1983, to August 31, 2021.  *Id*. ¶ 7.  She retired as the chief of accounts payable in the Financial Management Division of the Chief Financial Officer.  *Id*. ¶¶ 6, 11.  Barnes alleges that while she performed work for which the Department had classified "hundreds of CFO other supervisors" as GS-14, Barnes and six others similarly situated minority supervisors were classified as GS-13.  *Id*. ¶¶ 12, 15.

Barnes centers her Amended Complaint on a May 13, 2021, meeting with General B.  Am. Compl. (ECF No. 24) ¶ 2, 28.  According to Barnes, she and a group of six other minority supervisors discussed with General B[2] that each "was indeed qualified for the higher pay grade (GS[-]14)" but that the "CFO Chief refused to upgrade their positions."  *Id*. ¶ 29a, 26b.  The group discussed an email from the Chief of Staff that explained a review the Chief of Staff had requested, which showed that the group's was properly classified at the GS-13, but that in a follow up meeting the OHR manager stated no such review had been conducted.  *Id*. ¶¶ 29d-29g.  The group and General B also allegedly discussed the existence of prior communications with General A, the new Director, General S. B. and their staff, that Barnes and her colleagues "were indeed working at the higher grade level[.]"  *Id*. ¶ 29h.  Barnes admits that all of this "occurred prior to the May 13, 2021, meeting" and that "it was summarized to General B during that meeting."  *Id*. ¶ 34.

---

[1]     Should the case continue, the Secretary will dispute certain factual allegations.

[2]     The Amended Complaint uses pseudonyms to refer to the various involved individuals.

Barnes also alleges that she "explained to the Director in the May 13, 2021, meeting that she and the other supervisors had written their portion because that was the process to perform a Desk Audit and that they were directed by CFO Leadership to perform the task at hand." *Id*. ¶ 31. It is unclear from the Amended Complaint whether this meeting with the Director was the same as or separate from the May 13, 2021, meeting with General B. *See id*. ¶¶ 29. However, "the new Director did not take any actions to remedy [Barnes's] situation, subsequent to the May 13, 2021[,]" meeting. *Id*. ¶ 37. On June 24, 2021, Barnes contacted an EEO counselor. *Id*. ¶ 38.

Barnes sued in this Court on April 5, 2023. *See generally* Compl. (ECF No. 1). The Court dismissed the entire complaint for failure to state a claim and allowed her to amend the complaint by April 26, 2025. Mem. Op. (ECF No. 22) at 8. With respect to Barnes's discrimination claims, the Court found that Barnes failed to exhaust any claims prior to May 10, 2021, and she failed to state a claim for any conduct after May 10, 2021. *Id*. at 4-5. The Court also dismissed Barnes's equal pay and retaliation claims. *Id*. at 6-8.

On April 28, 2025, after the Court-imposed deadline to amend the complaint had passed and without seeking the Court's leave, Barnes filed her amended complaint. *See generally* Am. Compl. (ECF No. 24). She brings four counts: (1) race and sex discrimination under Title VII (Counts 1 and 2), *id*. ¶¶ 40-59; (2) age discrimination under ADEA (Count 3), *id*. ¶¶ 60-67; and (3) retaliation under Title VII (Count 4), *id*. ¶¶ 68-76. The Secretary again moves to dismiss.

## LEGAL STANDARDS

Motions to dismiss under 12(b)(6) test the sufficiency of a complaint. *Smith Thompson v. District of Columbia*, 657 F. Supp. 2d 123, 129 (D.D.C. 2009). "'A complaint can be dismissed under Rule 12(b)(6) when a plaintiff fails to state a claim upon which relief can be granted.'" *Howard Univ. v. Watkins*, 857 F. Supp. 2d 67, 71 (D.D.C. 2012) (quoting *Peavey v. Holder*, 657 F. Supp. 2d 180, 195 (D.D.C. 2009) (citing Fed. R. Civ. P. 12(b)(6))). To survive a motion to

dismiss, a complaint must contain sufficient factual matter, acceptable as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566, 570 (2007)). However, the complaint must appear plausible on its face and raise a reasonable expectation that discovery will produce supporting evidence. *Twombly*, 550 U.S. at 555. The Court stated that while there was no "probability requirement at the pleading stage," to survive a Rule 12(b)(6) motion to dismiss, the facts alleged in the complaint must be sufficient "to state a claim for relief that is plausible on its face," *id*. at 556, 570. The Court referred to this newly clarified standard as the "plausibility standard." *Id*. at 560-561 (abandoning the "no set of facts" language from *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Under Rule 8(a)(2), the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677. While a plaintiff is not required to plead "detailed factual allegations," Rule 8 demands more than "an unadorned, the-defendant unlawfully-harmed-me" accusation. *Id*. at 678. Merely offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557.

At the motion to dismiss stage, a plaintiff is not required to plead every fact necessary to establish a prima facie case. *Townsend v. United States*, 236 F. Supp. 3d 280, 298 (D.D.C. 2017)

(citing *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016)).  In reviewing the Amended Complaint, the Court should consider whether, "assuming the truth of the factual allegations, taken collectively, whether the inferences of discrimination drawn by the plaintiff are reasonable and plausibly supported." *Townsend*, 236 F. Supp. 3d at 298.  The Court "need not, however 'accept inferences drawn by [a] plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint.'  Nor must [the Court] accept legal conclusions couched as factual allegations." *Nurriddin*, 818 F.3d at 756 (alterations in original; citation omitted; quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## ARGUMENT

Title VII requires executive agencies to make "[a]ll personnel actions affecting employees or applicants for employment . . . free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  The ADEA similarly requires that "[a]ll personnel actions affecting employees or applicants for employment who are at least [forty] years of age . . . shall be made free from any discrimination based on age."  29 U.S.C. § 633a(a).  "[T]he two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).  The challenged personnel action must entail "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003).  Disparate treatment cases present "the most easily understood type of discrimination." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).  Disparate treatment cases occur where an employer has "treated [a] particular person less favorably than others because of" a protected trait. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985–86 (1988).  A disparate treatment

plaintiff must plausibly allege "that the defendant had a discriminatory intent or motive" for taking a job-related action. *Id*. at 986; *see also Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). The "very purpose of [federal discrimination laws] is to promote hiring on the basis of job qualifications, rather than on the basis of [protected characteristics]." *Griggs v. Duke Power Co.*, 401 U.S. 424, 434 (1971).

Here, Barnes' employment discrimination claims again fail because the Amended Complaint again fails to plausibly allege that any actions complained of were caused by her race, sex, or age. As an initial matter, alleged conduct occurring prior to May 10, 2021 "cannot form the basis" of Barnes's race, age, and sex discrimination claims because she failed to contact an equal employment opportunity counselor until June 24, 2021, outside the requisite the 45-day time to contact an EEO counselor for unlawful employment conduct. *See* Mem. Op. (ECF No. 22) at 4; Am. Compl. (ECF No. 24) ¶ 11. This leaves only Barnes's allegations that (1) the Director reaffirmed during a May 13, 2021, a prior decision not to promote Barnes to GS-14, Am. Compl. (ECF No. 24) ¶ 30; (2) that "the new Director did not take any actions to remedy [Barnes's] situation[] subsequent to the May 13, 2021[, meeting], *id*. ¶ 37; and that the Office of Inspector General "failed to follow up with [Barnes] concerning [Barnes's EEO] complaint," *id*. ¶ 37, 39.

Those remaining discrimination allegations fail to state a claim because Barnes's Amended Complaint fails to "amplify or elaborate on previously alleged claims." Mem. Op. (ECF No. 22) at 8 (cleaned up). Regarding the May 13, 2023, meeting, Barnes alleges that she and her colleagues discussed with the new Director their belief why they should be promoted to GS-14. Am. Compl. (ECF No. 24) ¶¶ 29. They argued to the new Director that they "were indeed qualified for the higher pay grade[.]" *Id*. ¶ 29a. According to them, a desk audit "verified the internal complaints (made since 2014) and stated that [Barnes] and the other supervisors were working at the GS[-]14

grade level" but the "CFO Chief refused to upgrade their positions." *Id*. ¶¶ 29b, 29h. "Upon his taking command . . . the Director . . . said he would love to see [Barnes] promoted . . . but he would not be changing the agency's policy for her to receive the Accretion of Duty Pay, even though it had been proven y the Desk Audit." *Id*. ¶ 30. Barnes also conveyed to the new Director a prior complaint she had concerning her promotion to GS-13, but concedes that "[n]o EEO complaint was filed." *Id*. ¶ 32. Barnes also alleges that the impetus for the May 13, 2021, meeting was an unspecified "Duty to Act Pledge," though the Amended Complaint does not further elaborate except to assert that the new Director required "all supervisors sign a Duty to Act Pledge." *Id*. ¶¶ 34, 37. Ultimately, the "Director did not take any actions to remedy [Barnes's] situation, subsequent to the May 13, 2021" meeting. *Id*. ¶ 37. Even if true, "none of these allegations are sufficient to state a claim of discrimination under Title VII or the ADEA, because [Barnes] does not allege that [the Secretary'] refusal to upgrade her position was based on [Barnes's] race, sex, or age." Mem. Op. (ECF No. 22) at 5.

Moreover, the limited allegations that any conduct was discriminatory are mere conclusory recitals of the elements of a cause of action. Conclusory allegations, however, are insufficient to plead a cause of action and survive a motion to dismiss. *Twombly*, 550 U.S. at 555. Barnes alleges that the Secretary "discriminated against Plaintiff in the terms and conditions of her employment on the basis of her Race African American." Am. Compl. (ECF No. 24) ¶ 43; *see also id*. ¶ 53 (same allegation but based on sex); ¶ 63 (same allegation but based on age). She also alleges that the Secretary "carried out the aforementioned acts of discrimination against Plaintiff on the basis of her Race African American - a protected class under Title VII." *Id*. ¶ 44; *see also id*. ¶ 53 (same allegation but based on sex). Similarly, the only allegation Barnes asserts about the Office of Inspector General is that Barnes contacted that office, that the office "wanted to meet with [her]

sometime in August 2021," but that it "failed to follow up with [Barnes] concerning [Barnes's EEO] complaint." *Id*. ¶ 39. These "unadorned, the-defendant unlawfully-harmed-me" accusation "stop[] short of the line between possibility and plausibility of 'entitlement to relief.'" *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. Counts I through III, therefore, fail to state a claim upon which relief can be granted and the Court should again dismiss them. *See* Fed. R. Civ. P. 12(b)(6).

Although Count IV of the Amended Complaint alleges retaliation, it fails to state a claim and should be dismissed. Am. Compl. (ECF No. 24) ¶¶ 68-76. "To state a Title VII claim for retaliation, a plaintiff must allege that (1) she engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." Mem. Op. (ECF No. 22) at 7 (cleaned up). Barnes in her Amended Complaint offers nothing new to support her retaliation claim; in fact, the retaliation counts in the Complaint and Amended Complaint are identical. *Compare* Compl. (ECF No. 1) ¶¶ 67-75 *with* Am. Compl. (ECF No. 24) ¶¶ 68-76. Barnes's Amended Complaint makes the same allegations the Court found insufficient regarding a 2015 meeting with the Chief Financial Officer during which the CFO "questioned why" she and six other minorities were not GS-14s and an email to her supervisor regarding "equality" of GS scale assignments. *See* Mem. Op. (ECF No. 22) at 8 (citing Compl. (ECF No. 1) ¶¶ 18, 19); *see also* Am. Compl. (ECF No. 24) ¶¶ 17, 18. The Amended Complaint does not allege that Barnes's informal complaints "'clearly complain about discriminatory treatment.'" Mem. Op. (ECF No. 22) at 8 (quoting *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 202 (D.D.C. 2012)). The Amended Complaint again does nothing more than allege that Barnes "inquir[ed] about the lack of promotion, while referencing other similarly situated supervisors" which the Court had already found "is not a specific complaint about

- 8 -

unlawful discrimination." *Id.* And the Court previously found that "any actions [the Secretary] took before [June 24, 2021, could not] have been in retaliation for her EEO complaint." *Id.* Count IV, therefore, fails to state a claim upon which relief can be granted and the Court should dismiss that Count. *See* Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For these reasons, the Secretary respectfully requests that the Court grant his motion and dismiss the Amended Complaint in its entirety.

Dated: May 12, 2025                Respectfully submitted,

                                   EDWARD R. MARTIN, JR., D.C. Bar #481866
                                   United States Attorney


                                   By:          /s/ *Dimitar P. Georgiev*
                                       DIMITAR P. GEORGIEV, D.C. Bar #1735756
                                       Assistant United States Attorney
                                       601 D Street, NW
                                       Washington, DC 20530
                                       (202) 815-8654

                                   *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARY BARNES,

        Plaintiff,

    v.

PETER HEGSETH,
Secretary of Defense,

        Defendant.

Civil Action No. 23-0932 (TSC)

### [PROPOSED] ORDER

UPON CONSIDERATION of Defendant's motion to dismiss, and the entire record herein, it is hereby

ORDERED that Defendant's motion is GRANTED, and it is further

ORDERED that this case is dismissed.

SO ORDERED:

_____
Date

_____
TANYA S. CHUTKAN
United States District Judge