**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MARY BARNES,** | |
| Plaintiff, | |
| v. | Civil Action No. 23-cv-932 (TSC) |
| **PETER HEGSETH**, Secretary of Defense, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

On April 5, 2023, Plaintiff Mary Barnes filed this case against the Department of Defense and the Secretary of Defense (collectively, "the Department"), alleging, *inter alia*, violations of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA") based on the Department's failure to increase her pay grade. Compl. ¶¶ 32–41, ECF No. 1. The court granted Defendants' first Motion to Dismiss, Defs.' Mot. to Dismiss, ECF No. 16-1, but gave Plaintiff leave to amend the Complaint. Mem. Op. at 8, ECF No. 22. Plaintiff then filed an Amended Complaint, reasserting her Title VII and ADEA claims. Am. Compl., ECF. No. 24. Defendants have now filed a Renewed Motion to Dismiss, ECF No. 25 ("Defs.' Renewed Mot."). Upon consideration of the pleadings and the record, and for the reasons stated herein, the court will GRANT in part and DENY in part Defendants' Renewed Motion to Dismiss.

## I.    BACKGROUND

As set forth in the court's prior Opinion, Plaintiff is a sixty-six-year-old African American woman who served as a civilian employee in federal government for over thirty-eight years. Am. Compl. ¶¶ 5–7. Throughout the relevant period, Plaintiff worked in the Department of Defense

1

and, in 2021, retired as the Chief of Accounts Payable in the Financial Management Division of the Chief Financial Officer ("CFO"). *Id.* ¶¶ 6, 10. According to Plaintiff, from 2011 through her retirement, she "endured a continuing pattern of harassment, an on-going hostile work environment[,] and continuing discrimination," as well as "on-going retaliation . . . due to [her] EO's activities." *Id.* ¶¶ 10–11. Specifically, Plaintiff alleges that despite her consistent outstanding performance reviews and repeated advocacy for a pay level increase, she and six other minority or female supervisors in the Financial Management Division remained graded on the General Schedule ("GS") pay scale as GS13s, while the hundreds of other CFO supervisors worked at the GS14 level. *Id.* ¶¶ 9, 12, 15.

Beginning in 2015, Plaintiff questioned CFO management about why she and the other GS13 supervisors in the Financial Management Division were not classified as GS14s. *Id.* ¶¶ 17–18. In 2019, after management failed to take any action, Plaintiff and the other supervisors in the Division emailed the agency Director to "voice concerns regarding the lack of pay equality amongst CFO supervisors." *Id.* ¶¶ 18–20. The Director appointed his Chief of Staff to the inquiry, who initially provided Plaintiff and the others conflicting information regarding the appropriateness of their classifications but who eventually directed them to submit a desk audit. *Id.* ¶ 22. On March 11, 2021, "after Plaintiff's position was classified as equivalent to a GS14 level, Supervisory Financial Specialist," "Defendant refused to upgrade Plaintiff's position from GS13 to GS14" and "refused to increase Plaintiff's pay accordingly." *Id.* ¶ 25. Thereafter, Defendants continued to refuse to promote Plaintiff "from March 24, 2021, through May 13, 2021." *Id.* ¶ 27.

According to Plaintiff, "[t]his whole process culminated" when she and the other GS13 supervisors met with "General B"[1] on May 13, 2021. *Id.* ¶ 28. That meeting included "summarizations and discussions" about prior events surrounding the complaining supervisors' GS13 classifications. *Id.* ¶ 29. In particular, the attendees addressed: (1) how they learned they were "qualified for the higher pay grade (GS14)" from the individual who performed their desk audits; (2) the fact that the CFO Chief refused to upgrade their positions, despite knowing they qualified for a higher pay grade; and (3) how management provided inconsistent information regarding internal reviews of Plaintiff's and the other GS13 supervisors' positions, as well as conflicting information regarding whether desk audits were valid grounds to justify pay grade increases, all despite email evidence that the supervisors were working at a GS14 level and that desk audits were valid grounds for increases.[2] *Id.* ¶¶ 29, 31, 36. Eventually, agency leadership informed Plaintiff that although she and the other aggrieved supervisors were technically working at the GS14 level, they would not be upgraded "because the Defendant no longer acknowledged desk audits as a means for upgrades/accretion of duties." *Id.* ¶ 36.

Thereafter, Plaintiff emailed the new agency Director, who "did not take any actions to remedy Plaintiff's situation." *Id.* ¶ 37. Consequently, Plaintiff filed a formal complaint with the Equal Employment Opportunity ("EEO") Counselor on June 24, 2021, regarding "Defendant's refusal to upgrade" her position and pay. *Id.* ¶ 38. She also contacted the Office of the Inspector

---

[1] The Amended Complaint refers to individuals by pseudonyms for "security reasons."

[2] Plaintiff also repeatedly references a "Duty to Act Pledge" in her Amended Complaint but fails to explain its relevance beyond explaining that all managers and supervisors were required to sign it, that it was ultimately the reason the aggrieved supervisors met with General B, and that leadership failed to uphold it. Am. Compl. ¶¶ 34–35, 37.

General, who informed Plaintiff that they wanted to meet but who nonetheless "failed to follow up with Plaintiff concerning Plaintiff's EO complaint." *Id.* ¶ 39.

Dissatisfied with her administrative remedies, Plaintiff filed this lawsuit on April 5, 2023, alleging, *inter alia*, race discrimination through disparate treatment under Title VII, sex discrimination through disparate treatment under Title VII, age discrimination under the ADEA, and retaliation under Title VII. Compl. ¶¶ 32–75. The court dismissed Plaintiff's initial Complaint, finding that because Plaintiff waited until June 24, 2021, to contact the EEO, she failed to exhaust her discrimination claims insofar as they were based on alleged discriminatory conduct that occurred before May 10, 2021. Mem. Op. at 4–5. As for conduct occurring thereafter, the court determined that Plaintiff's Complaint failed to sufficiently state a discrimination claim because she did not "allege that Defendant's refusal to upgrade her position was based on her race, sex, or age" and otherwise "fail[ed] to specify when she learned" of white, male, or younger employees who received a GS14 classification. *Id.* at 5–6.

With regard to her retaliation claim, the court concluded that Plaintiff failed to sufficiently allege a causal nexus between her protected activities and leadership's refusal to increase her pay grade because (1) the Department failed to upgrade her before she filed her EEO complaint, and (2) Plaintiff did not specify whether she complained about her discriminatory treatment in her previous informal complaints to her supervisors. *Id.* at 7–8. Despite these shortcomings, the court granted Plaintiff leave to amend. *Id.* at 8. On April 28, 2025, Plaintiff filed her Amended Complaint, which realleged the above claims and incorporated new factual allegations regarding her meeting with General B. *See* Am. Compl. ¶ 29. The Department then filed its Renewed Motion to Dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6). Defs.' Renewed Mot. at 1.

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.*, which entitles the pleader the "right to relief above the speculative level," *Twombly*, 550 U.S. at 555. The court presumes the truth of the complaint's factual allegations under Rule 12(b)(6), *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), but need not "'accept as true a legal conclusion couched as a factual allegation,'" *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)), nor "inferences [that] are unsupported by the facts set out in the complaint," *id.* (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

## III.    ANALYSIS

### A. Race, Sex, and Age Discrimination Claims

Defendants contend that Plaintiff's Amended Complaint fails to plausibly allege that any acts occurring within the requisite exhaustion period "were caused by her race, sex, or age." Defs.' Renewed Mot. at 6. The court agrees, but only with regard to Plaintiff's race and age discrimination claims.

"Under Title VII [and] the ADEA . . . the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). The "sole question" in "most employment discrimination cases that reach federal court . . . is whether the action occurred because of discrimination." *Id.* "Though the initial burden of pleading the because of element is not onerous," *Keith v. Gov't Accountability Off.*, No.

21-cv-2010, 2022 WL 3715776, at *3 (D.D.C. Aug. 29, 2022) (internal quotations and citation omitted), a plaintiff must allege some facts that demonstrate their race, sex, or age "was the reason for defendant's actions and cannot merely invoke" their race, sex, or age "in the course of a claim's narrative." *Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 102 (D.D.C. 2021) (cleaned up).

At the outset, the court notes that Plaintiff's amendments to her original Complaint largely focus on the various topics discussed at the May 13, 2021, meeting with General B. Am. Compl. ¶ 29. These amendments, however, do not alter the court's prior conclusion that conduct occurring before May 10, 2021, cannot form the basis for Plaintiff's discrimination claims because Plaintiff failed to contact the EEO Counselor until June 24, 2021, despite her having "reason to believe that she had been the victim of discrimination as early as 2015." Mem. Op. at 4. While the court questions whether any conduct occurring on or after May 10, 2021, qualifies as an independent "adverse employment action," *Baloch,* 550 F.3d at 1196, Defendants do not challenge Plaintiff's Amended Complaint with regard to this element in their Renewed Motion to Dismiss.[3] *See* Defs.' Renewed Mot. at 6–8. Thus, any such argument is deemed waived. *See Pub. Citizen Health Rsch. Grp. v. Nat'l Insts. of Health,* 209 F. Supp. 2d 37, 43–44 (D.D.C. 2002).

As to the causation element, the court previously determined that Plaintiff failed to "allege that Defendant's refusal to upgrade her position was based on her race, sex, or age," Mem. Op. at

---

[3] Defendants challenge Plaintiff's pleadings regarding this element in their Reply by asserting that Plaintiff failed to allege that any GS14 billets were available during the requisite timeframe for exhausted conduct. *See* Defs.' Reply at 2, ECF No. 28. Because Defendants raised this argument for the first time in its Reply, however, the court will not consider it. *See Lewis v. District of Columbia*, 791 F. Supp. 2d 136, 139 n.4 (D.D.C. 2011) ("[I]t is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief.") (quoting *Aleutian Pribilof Islands Ass'n v. Kempthorne*, 537 F. Supp. 2d 1, 12 n.5 (D.D.C. 2008)).

5, and "[t]hreadbare recitals of the elements" of the causes of action or "mere conclusory statements" would not suffice, *Iqbal*, 556 U.S. at 678; *see* Am. Compl. ¶¶ 40–49 (race discrimination), 50–59 (sex discrimination), 60–67 (age discrimination).  Nonetheless, as the court observed, Mem. Op. at 5–6, Plaintiff may also allege causation "by showing 'that she was treated differently from similarly situated employees who are not part of the protected class.'" *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (quoting *George v. Leavitt,* 407 F.3d 405, 412 (D.C. Cir. 2005)); *Barot v. Aldon Mgmt.*, No. 18-cv-140, 2023 WL 6199075, at *6 (D.D.C. Sept. 22, 2023) (applying "Title VII's framework to ADEA claims, including the standards for evaluating comparator evidence").

In her Amended Complaint, Plaintiff again proffers comparator evidence by identifying other employees outside her claimed protected classes who were paid at the GS14 level.  *See* Am. Compl. ¶¶ 47, 57, 65.  Of the two younger women she identified as classified at the GS14 level, one woman, whom Plaintiff asserts is white, served as Plaintiff's supervisor, undermining any inference that she was "similarly situated." *See Martin v. Locke,* 659 F. Supp. 2d 140, 147 (D.D.C. 2009) (noting that an employee was not similarly situated to her manager).  As to the other younger woman, the Amended Complaint merely states that she was "a previous FMD GS14 supervisor that worked at headquarters and returned to [the Financial Management Division] to occupy one of the newly created GS14 positions."  Am. Compl. ¶ 65.  This does not plausibly allege that Plaintiff was "similarly situated" in any "relevant respects" except that they worked in the same division within the Department.  *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 533 (D.C. Cir. 2025).  Plaintiff also alleges, however, that her supervisor's husband was hired as a GS13 supervisor in the Financial Management Division but "was paid what a GS14 supervisor earned walking in the door," despite being new to the federal workforce.  Am. Compl. ¶ 57.  This

allegation, taken with Plaintiff's assertion that she was qualified for a higher pay grade, provides just enough information to plausibly infer that Plaintiff's purported differential treatment was motivated by her gender. *See Dickerson v. D.C.*, 315 F. Supp. 3d 446, 454–55 (D.D.C. 2018) (determining that an African American plaintiff stated a section 1981 claim when he alleged that "a white woman with less education and experience than [him] was selected to fill his position"); *cf. Joyner,* 140 F.4th at 532 (upholding the district court's dismissal where the plaintiff had only alleged that "he and his comparators were attorneys working at the same law firm").

Consequently, the court will grant Defendants' motion except with regard to Plaintiff's sex discrimination claim.

### B. Retaliation Claim

"Title VII prohibits employers from retaliating against an employee 'because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or heading under this subchapter.'" *Tucker v. Johnson*, 211 F. Supp. 3d 95, 103 (D.D.C. 2016) (quoting 42 U.S.C. § 2000e-3(a)). A plaintiff alleging a Title VII claim for retaliation must allege "that (1) [she] engaged in protected activity; (2) [she] was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." *Baird v. Gotbaum*, 792 F.3d 166, 168 (D.C. Cir. 2015) (internal quotations and citation omitted). "While it is true that not every complaint garners its maker protection under Title VII, a complaint is protected conduct if it 'in some way allege[s] unlawful discrimination, not just frustrated ambition.'" *Tucker*, 211 F. Supp. 3d at 104 (quoting *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006)).

As the court previously explained, any actions taken by the Department prior to June 24, 2021, when Plaintiff complained to an EEO counselor, could not have been in retaliation for Plaintiff's EEO complaint. *See* Mem. Op. at 7. Plaintiff asserts that the Department retaliated against her for her prior EEO activities, but the only factual allegation that occurred after her EEO complaint is that the Office of the Inspector General "wanted to meet with Plaintiff" but "failed to follow up" with her. Am. Compl. ¶ 39. This will not suffice. *See Holmes v. Washington Metro. Area Transit Auth.*, 723 F. Supp. 3d 1, 19 (D.D.C. 2024) ("An employer's 'alleged failure to investigate alone does not make up a tangible, affirmative legally cognizable adverse action.'" (quoting *Runkle v. Gonzales*, 391 F. Supp. 2d 210, 223 (D.D.C. 2005)).

With regard to Plaintiff's informal complaints to leadership before her EEO complaint, Plaintiff again fails to allege that she "complained before 2021 of any type of discrimination when she spoke to her supervisors regarding her GS classification and bonus pay." Mem. Op. at 7. Though she states that she made prior complaints to management regarding her grade increase to GS13 in 2013, Am. Compl. ¶¶ 13, 32, "questioned why" she and minority and female GS13 supervisors in the Financial Management Division were not GS14s in her 2015 meeting with the CFO Chief, *id.* ¶ 17, and, in 2019, emailed her supervisors about the "equality" of the Department's GS scale assignments, *id.* ¶ 18, such inquiries are not the type of "clear[] complain[t] about discriminatory treatment" required to make out a retaliation claim, *Peters v. D.C.*, 873 F. Supp. 2d 158, 202 (D.D.C. 2012). Absent specific, prior complaints of unlawful discrimination, the court will dismiss Plaintiff's retaliation claim.

### C. Leave to Amend

Plaintiff seeks leave to file a Second Amended Complaint if the court dismisses her Amended Complaint so that she may identify more individuals for her comparator allegations

9

through "limited discovery." *See* Pl.'s Opp'n at 11–13.  As noted above, the court dismisses her age and race discrimination claims as well as her retaliation claim.  It will therefore deny as moot Plaintiff's request insofar as she seeks to amend her sex discrimination claims.  While the court is inclined to also deny Plaintiff's request to amend her remaining claims for failure to cure the deficiencies that the court identified in its prior Opinion, *see Hajjar-Nejad v. George Washington Univ.*, 873 F. Supp. 2d 1, 11–12 (D.D.C. 2012) (collecting cases), it will nonetheless grant Plaintiff's request, including permitting limited discovery, so that she may: (1) bolster her comparator allegations by providing further information on how she was similarly situated to her comparators; and (2) clearly articulate whether and to what extent she expressly complained of discrimination in her prior informal complaints to management.  *See* Fed. R. Civ. P. 15(a)(2) (directing courts to grant leave to amend "freely . . . when justice so requires").

## IV.    CONCLUSION

For the foregoing reasons, the court will GRANT Defendants' Renewed Motion to Dismiss in regard to Counts I, III, and IV and DENY Defendants' Renewed Motion to Dismiss with respect to Count II.  A separate order will accompany this Opinion.

Date:  March 24, 2026

*Tanya S. Chutkan*

TANYA S. CHUTKAN
United States District Judge